UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASHMATU BANGURA,

        *Plaintiff*,

v.

VITA SURGICAL GROUP, LLC *et al.*,

        *Defendants*.

Civil Action No. 23-2987 (TJK)

**MEMORANDUM OPINION & ORDER**

Ashmatu Bangura, a former employee of Vita Surgical Group, LLC, sued her employer and Dr. Henok Araya, her boss, for unpaid overtime wages and backpay. Defendants move to compel arbitration and to dismiss the case, pointing to an agreement that required Bangura to arbitrate her employment-related claims. The parties disagree as to whether Bangura's threshold challenges to the agreement to arbitrate are themselves subject to arbitration. Bangura is right that the Court must decide these arbitrability challenges. But Defendants are right that Bangura's challenges fail, to the extent they seek to render the agreement invalid or unenforceable. Thus, the Court will grant the motion to compel and stay the case while the parties pursue arbitration. But before doing so, it will sever two unenforceable provisions of the agreement.

**I.    Background**

Bangura worked as a "Front Desk/Office Coordinator" at Vita Surgical Group from about April to August 2023. ECF No. 1 ¶ 8. She was paid by the hour at $23 per hour. *Id.* ¶ 9. She alleges that she regularly worked hours for which she was not compensated at all. *Id.* ¶ 10. Moreover, despite working about 51 hours of overtime during her employment, she says she was only compensated for this time at her regular $23 per hour rate, rather than the overtime rate of $34.50.

*Id.* She further alleges that Defendants failed to pay her for her final two weeks of employment. *Id.* ¶ 11. In total, Bangura claims that Defendants owe her $2,289.58 in unpaid overtime and back-pay wages. *Id.* ¶ 31.

When Bangura started working at Vita Surgical Group, she signed a document titled "VITA SURGICAL, LLC AND DR. HENOK ARAYA, MD CONFIDENTIAL NON-DISCLOSURE AND EMPLOYEMENT [sic] AGREEMENT." ECF No. 9-1 at 2. This document, which the Court refers to as the Employment Agreement, also includes an arbitration provision, which provides that "ALL DISPUTES IN REGARDS TO YOUR EMPLOYMENT . . . BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION ACCORDING TO THE FAA," and references the "Attached standard arbitration procedures."[1] *Id.* at 5. Attached to the Employment Agreement was a two-page document titled, "Standard provisions: Resolving employer and employee dispute with Mandatory Arbitration," which describes the arbitration procedures, *id.* at 7–8, and which the Court refers to as the Arbitration Agreement.

The Arbitration Agreement states that "[a]ny dispute . . . that involves Washington vita surgical group or vita surgical group or its employee or doctors or dr araya must be resolved with arbitration except as noted below." ECF No. 9-1 at 7. It then explains that the employee will not be required to arbitrate "(1) any individual case in small claims court so as it remains an individual case in that court and you are pro-se; or (2) a case we file to collect money you owe us." *Id.* It further exempts from arbitration "[a]ny breach of the confidential non-disclosure agreement." *Id.*

The Arbitration Agreement includes a section titled, in bold, "**What claims are subject to arbitration**." ECF No. 9-1 at 7 (emphasis in original). A list of four numbered items follows. The first item sets out the requirement to submit disputes to arbitration: "If either you or we make

---

[1] The "FAA" is a reference to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

a demand for arbitration, you and we must arbitrate any dispute or claim." *Id.* The fourth item, which the parties agree is a delegation clause, reads:

> Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence ). [sic] However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

*Id.* Immediately below the fourth item is a heading reading "No Class Actions," under which an unnumbered paragraph reads:

> YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR AR-BITRATION.  YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANYONE.

*Id.* That paragraph is followed by two other unnumbered paragraphs elaborating on the restriction on class action proceedings. *See id.* Below that, a bolded heading, with a bullet, states, "**How to start an arbitration, and the arbitration process**," which is then followed by another numbered list. *Id.* at 7–8 (emphasis in original).  Within that list, the Arbitration Agreement provides that "[t]he party seeking arbitration must select an arbitration administrator, which **cannot** be the American Arbitration Association or JAMS," and that "[t]he arbitration administrator will appoint the arbitrator" who must be "a lawyer with at least ten years of legal experience." ECF No. 9-1 at 7–8 (emphasis in original).  The Arbitration Agreement requires the arbitrator to "apply the same law and legal principles, consistent with the FAA, that would apply in court." *Id.* at 8.

Finally, the Arbitration Agreement addresses the issue of fees and costs.  With respect to legal fees, it instructs that "[e]ach party is responsible for its legal fees unless a motion to compel arbitration is granted then the losing party pays the other party's full legal fees." ECF No. 9-1 at 8.  And with respect to the arbitration fees, it provides that "[i]nitial arbitration and arbitration

3

administrator fees and retainer fees are paid by the plaintiff. After the depletion of the retainer fees, the arbitrator's and arbitrator administrator's fees are divided equally between both parties. Arbitrator does not have the discretion to award legal or arbitrator fees." *Id.* The Arbitration Agreement concludes with the following sentence: "**You cannot reject this Arbitration section of your Agreement after employment commences**." *Id.* (emphasis in original).

Bangura sued Defendants for allegedly violating the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Act Revision Act of 1992 ("DCMWA"), and the District of Columbia Wage Payment and Collection Law ("DCWPCL"). ECF No. 1 at 1; *see also* 28 U.S.C. § 1 *et seq.* (FLSA); D.C. Code § 32-1001 *et seq.* (DCMWA); D.C. Code § 32–1301 *et seq.* (DCWPCL). Defendants move to compel arbitration and to dismiss. ECF Nos. 9, 24. They argue that Bangura agreed to submit her claims to mandatory arbitration, and that she agreed to delegate her challenges to the Arbitration Agreement to the arbitrator. *See generally* ECF No. 24. In response, Bangura says that she did not agree to delegate arbitrability to the arbitrator—this Court should undertake that task—and that the arbitration clause is invalid or unenforceable for several reasons. *See generally* ECF No. 25.

**II.    Legal Standard**

By enacting the Federal Arbitration Act, Congress adopted "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Arbitration is a matter of contract. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court must stay litigation "upon being satisfied that the issue" is "referable to arbitration" under the agreement. *Id.* § 3. A court, in response to a motion from a party resisting arbitration, must compel arbitration "in accordance with the terms of the agreement"

4

when the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id*. § 4.  When presented with such a motion, the court should be mindful that the FAA creates a strong presumption favoring the enforcement of arbitration agreements, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

Courts consider motions to compel arbitration as "a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus*., 531 F.3d 863, 865 (D.C. Cir. 2008) (cleaned up).  "Although a motion to compel arbitration is similar to a motion for summary judgment in framing the burden of proof, the two motions are of course not identical." *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020).  In considering a motion to compel arbitration, the court must consider arbitrability at the outset of litigation; it "cannot postpone deciding the question of arbitrability *vel non* and allow the case to proceed on the merits." *Id*.

"Because the party seeking to enforce an arbitration agreement bears the burden of proving that the other party agreed to arbitrate, the party seeking to compel arbitration must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021) (internal citations and quotation marks omitted).  "The burden then shifts to the non-moving party to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Rule 56." *Id*. (internal citations and quotation marks omitted).  "The court must grant summary judgment with respect to the formation of an arbitration agreement if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. (internal citations and quotation marks omitted).  But if the court concludes that a "genuine dispute

5

of material fact exists as to the making of the arbitration agreement, including whether the parties assented to the agreement," the case must "proceed summarily to trial solely on the issue of arbitrability." *Jin*, 966 F.3d at 827 (internal quotations omitted).

### III.  Analysis

In opposing arbitration, Bangura does not question whether the parties formed an agreement to arbitrate, an issue that would unquestionably be reserved for the Court, not an arbitrator, to decide. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); 9 U.S.C. § 4. Instead, she argues that the Court should deny the motion to compel because the Arbitration Agreement is invalid or unenforceable for several reasons: (1) it requires her to pay some of the arbitrator's fees, making it per se invalid; (2) it is procedurally and substantively unconscionable; and (3) it requires her to forgo substantive statutory rights by prohibiting her recovery of attorneys' fees. In general, "a gateway dispute about whether the parties are bound by a given arbitration clause raises 'a question of arbitrability' for a Court to decide.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–946 (1995)). In response, though, Defendants say that under the Arbitration Agreement's delegation clause—which Bangura does not separately challenge—these issues must be decided by the arbitrator. The Court finds that the delegation clause does not come close to clearly and unmistakably reflecting the intent of the parties that an arbitrator should decide these arbitrability issues. So the Court must resolve them. That said, none of Bangura's arguments provide a reason to invalidate the Arbitration Agreement. Thus, the Court will grant the motion to compel arbitration and stay the case, while striking two unenforceable provisions of that agreement.

**A.     Because the Delegation Clause Does Not Reflect a Clear and Unmistakable Intent to Delegate Bangura's Arbitrability Challenges to the Arbitrator, This Court Must Decide Them**

"A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). "But the Supreme Court has 'added [the] important qualification' that there must be 'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'" *Caremark*, 43 F.4th at 1029 (quoting *First Options of Chi.*, 514 U.S. at 944).

Recall the delegation clause at issue here:

> Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence ). [sic] However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

ECF No. 9-1 at 7.

The Court agrees with Bangura that the delegation clause does not provide clear and unmistakable evidence that the parties agreed to delegate her arbitrability claims to the arbitrator. On the one hand, Bangura is right that the first sentence of the delegation clause can plausibly be read to reserve questions of arbitrability for the Court. Indeed, it is possible to read the meaning of "section" in the clause's first sentence as applying to all numbered items in the list under the heading "[**w**]**hat claims are subject to arbitration.**" *See id.* That includes the first item in the list,

7

which sets out the requirement to send employment-related disputes to arbitration—in other words, as Bangura agues, *arbitrability*. Even more plausibly, the word "section" could mean the entire Arbitration Agreement. That term—"section"—is employed in the Arbitration Agreement on several occasions to refer to that entire two-page document. For example, the Arbitration Agreement begins, "PLEASE READ THIS SECTION CAREFULLY. THIS SECTION WILL APPLY TO ALL DISPUTES," and ends, "You cannot reject this Arbitration section of your Agreement after employment commences." Obviously, if "section" is read to mean the entire Arbitration Agreement, that would suggest the parties intended that the Court decide Bangura's arbitrability claims. All the above, taken together, is substantial evidence that the parties did not intend to delegate arbitrability to the arbitrator. On the other hand, though, Defendants' argument that the word "section" encompasses only the unnumbered paragraphs *following it* about class actions is at least possible. If that were so, it would limit the first sentence's applicability—and thus, this Court's jurisdiction—to disputes concerning the class action waiver. But the meaning of "section" in the context of this hodgepodge of a document is hard to discern.

If the second sentence of the delegation clause were clear, it might help determine the meaning of the first. But it too is hard to figure out. Most obviously, it could be read, as Defendants say, to delegate arbitrability—"any dispute or argument that concerns the validity or enforceability of the Agreement as a whole"—to the arbitrator. ECF No. 9-1 at 7; *see* ECF No. 24 at 4. But that reading assumes that the word "Agreement" means the Arbitration Agreement, as opposed to the entire Employment Agreement. If "Agreement" means the Employment Agreement, it would not delegate arbitrability, but challenges to the validity of that employment contract as a whole, which do not impact the validity or enforceability of arbitration under the FAA. *See Rent-A-Center*, 561 U.S. at 70. And the problem for Defendants is that on several occasions, when the

8

Arbitration Agreement uses the word "Agreement" without further qualifier, it appears to refer to the *Employment* Agreement, which suggests that the Employment Agreement is the agreement to which the second sentence of the delegation clause also refers. For example, as mentioned above, the document concludes: "You cannot reject this Arbitration section of your Agreement after employment commences." ECF No. 9-1 at 8.

For all these reasons, on balance, Bangura has the better of the argument that the delegation clause reserves arbitrability for the Court, not the arbitrator. But in any event, there is no question that the clause does not provide "clear and unmistakable evidence" that the parties agreed to delegate arbitrability to the arbitrator. *Henry Schein*, 586 U.S. at 69. Because the delegation clause does not meet this standard, the Court proceeds to resolve Bangura's challenges to the Arbitration Agreement.

### B. Bangura's Challenges to the Arbitration Agreement Do Not Render It Invalid or Unenforceable, but the Court Will Sever Two Unenforceable Provisions

#### 1. Arbitrator's Fees

Bangura's first argument is that the Arbitration Agreement is per se invalid because it requires her to pay part of the arbitrator's fees. In relevant part, it reads:

> **Arbitration fees**: Initial arbitration and arbitration administrator fees and retainer fees are paid by the plaintiff. After the depletion of the retainer fees, the arbitrator's and arbitrator administrator 's [sic] fees are divided equally between both parties. Arbitrator does not have the discretion to award legal fees or arbitrator fees.

ECF No. 9-1 at 8 (emphasis in original).

In support of this argument, Bangura relies on the D.C. Circuit's decision in *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997). In that case, the Circuit considered an arbitration agreement that the plaintiff needed to sign as a condition of employment. *See id*. at 1469. After concluding that the agreement was valid, the Circuit addressed which party should bear the arbitration costs, about which the agreement was silent. *Id.* at 1483. The Circuit

9

held that the plaintiff "could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses," because these fees are unlike anything he would have to pay in court.[2]  *Id.* at 1485.  Thus, the Circuit interpreted the agreement as requiring the employer to pay "all of the arbitrator's fees necessary for a full and fair resolution of [the plaintiff's] statutory claims."  *Id.*  The Circuit has since referred to *Cole* as standing for a per se rule that "when a federal statutory claim is subjected to arbitration pursuant to an arbitration agreement executed as a condition of employment, an employee cannot be required to pay arbitration-related costs that are analogous to a judge's salary or expenses in a traditional judicial forum."  *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 704 (D.C. Cir. 2001).  Not long after, the Circuit reiterated that in *Cole* it had "held that an employee who agrees to arbitration of disputes as a condition of employment and who makes a claim based on federal statutory rights may not be charged certain fees and expenses for arbitration of the claim."  *Brown v. Wheat First Secs., Inc.*, 257 F.3d 821, 821 (D.C. Cir. 2001).

Defendants, in turn, argue that the Supreme Court's decision in *Green Tree Financial Corporation-Alabama v. Randolph*, 531 U.S. 79 (2000), has undermined *Cole*, and that *Cole*'s holding is on "shaky ground."  ECF No. 24 at 6 (quoting *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 182 n.3 (D.D.C. 2015)).  In that case, in a situation similar to *Cole*, the Court found that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Green Tree*, 531 U.S. at 91–92 (citation modified).  The *Green Tree* Court recognized that "large arbitration costs could preclude a litigant . . . from effectively vindicating her federal

---

[2] The Circuit in *Cole* held that plaintiffs *may* be required to pay arbitration fees analogous to "filing fees and other administrative expenses" which litigants regularly incur in federal district court proceedings.  *Cole*, 105 F.3d at 1484.

statutory rights in the arbitral forum." *Id*. at 90.  Even so, motived by "the liberal federal policy favoring arbitration agreements," the Court concluded that silence in an arbitral agreement could not establish that the litigant would in fact "bear such costs." *Id*. at 90–91.

Still, "district judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule[s] it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).  And Defendants stop short of arguing that *Cole* has been overruled, and for good reason: in *LaPrade* and *Brown* the Circuit treated it as good law, and it has never held otherwise.  Thus, to the extent that the Arbitration Agreement requires Bangura to pay "all or part of the arbitrator's fees and expenses" to vindicate her federal statutory rights, it is invalid and unenforceable under the law of this Circuit.  *Cole*, 105 F.3d at 1485.  That said, *Cole* did not establish a rule that requires the Court to invalidate the entire Arbitration Agreement—far from it.  And while *Green Tree* may prohibit the Court from invalidating the entire Arbitration Agreement solely because of the arbitration fee provision, the Court need not do so, because it may—as Defendants urge in the alternative—simply sever the provision to the extent it runs afoul of *Cole*.[3]

Under District of Columbia law, when faced with an arbitration agreement with an unenforceable provision, courts may "decline to enforce the agreement and allow the statutory claims to proceed in court, or sever the offensive provision and require arbitration under the remainder of the agreement." *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (citation omitted).[4]  In deciding whether to sever, courts must give "effect to the intent of the contracting

---

[3] Bangura has not tried to meet her burden under *Green Tree* to prove that arbitration would be prohibitively expensive for her.

[4] The Arbitration Agreement provides that District of Columbia law governs, ECF No. 9-1 at 8, this action was brought in the District of Columbia, and the parties have "accepted the

11

parties." *Id.* at 84.  And in *Booker*, the Circuit cautioned that invalidating an entire agreement was appropriate in cases where "illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts." *Id*. at 84–85.

The Court finds that the provision concerning the arbitrator's fees is severable.  The Employment Agreement contains a severability clause, which reads: "Each provision of this agreement is severable.  If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect." ECF No. 9-1 ¶ 17.  The severability clause speaks to "[t]he parties' intention to make a contract severable," which in this case was "clearly expressed in the agreement."  *RDP Dev. Corp. v. Shwartz*, 657 A.2d 301, 307 n.7 (D.C. 1995).  And the Arbitration Agreement is not pervasively infected with illegality such that it should be invalidated in its entirety.

Bangura argues that the Arbitration Agreement itself does not contain a severability clause.  But the Employment Agreement, which does, explicitly incorporates by reference the Arbitration Agreement.  ECF No. 9-1 ¶ 20.  Moreover, the Employment Agreement is the document that Bangura signed.  *See generally id.*  So the Court reads the Arbitration Agreement to be an integrated part of the Employment Agreement, a conclusion further bolstered by passages in the Arbitration Agreement which refer to the "Arbitration section of your Agreement." *Id.* at 8.  Thus, the severability clause applies to "[e]ach provision" of the Arbitration Agreement, including the provision that addresses the arbitrator's fees.  *Id*. ¶ 17.

For these reasons, to the extent the arbitrator's fees provision requires Bangura to pay "all or part of the arbitrator's fees and expenses" necessary to vindicate her federal statutory rights,

---

application of D.C. law by asserting arguments based on D.C. law in their briefs." *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 97 (D.D.C. 2013).

*Cole*, 105 F.3d at 1485, the Court will sever it. With this provision severed, Bangura's first argument is no reason to find the Arbitration Agreement invalid or unenforceable.

### 2. Unconscionability

Bangura next argues that the Arbitration Agreement is invalid and unenforceable because it is unconscionable. Under District of Columbia law, a party seeking to establish a contract as unconscionable must show "that the contract was both procedurally and substantively unconscionable." *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 97 (D.D.C. 2013) (citing *Urb. Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C.1983) and *Smith, Bucklin & Assoc., Inc. v. Sonntag*, 83 F.3d 476, 480 (D.C. Cir. 1996)). Procedural unconscionability occurs if, considering all the circumstances of the agreement, "a party lacked meaningful choice as to whether to enter the agreement." *Id.* (citing *Urb. Invs.*, 464 A.2d at 99). Substantive unconscionability exists if the agreement's terms "are so outrageously unfair as to shock the judicial conscience." *Id.* at 99. To be substantively unconscionable, the contract must be one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id.* (citing *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 95 (D.D.C. 2012)).

The Arbitration Agreement is not unconscionable. Starting with procedural unconscionability, Bangura argues that she lacked any meaningful choice as to whether to enter the Arbitration Agreement because her employment was conditioned on her accepting it and because she had no opportunity to bargain or negotiate with respect to its terms. But an inability to negotiate is not enough to show procedural unconscionability. Under District of Columbia law "[t]he mere fact that a contract is take-it-or-leave-it does not render a party powerless and without real choice"; instead, there "must be something more," such as a "showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation <u>and</u> that the services could not

be obtained elsewhere." *Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 181 (D.D.C. 2016) (emphasis in original) (citation omitted); *see also Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d 197, 205 (D.D.C. 2017). In the employment context, that an agreement "was presented to [an employee] as a condition of employment without further negotiation does not render it unenforceable." *Fox*, 920 F. Supp. 2d at 98 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Bangura tries to conjure up a "gross disparity in bargaining power" between herself and Defendants because they are "a limited liability company and a well-educated doctor" and she is an "hourly employee." ECF No. 25 at 11. That is not enough. "This was not a contract of adhesion between a powerful corporation and an individual consumer," *Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56, 67 (D.D.C. 2019), but a regular employment agreement between an individual and a small business. Bangura has failed to show any "special circumstances that would negate her assent to the contract," *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 151 (D.D.C. 2002) (internal quotations omitted), or show that she lacked a meaningful choice "to simply go deal with someone else," *Ruiz*, 156 F. Supp. 3d at 181.[5]

### 3. Attorneys' Fees

Finally, Bangura argues that the Arbitration Agreement is invalid and unenforceable because it impermissibly requires her to give up her statutory rights to attorneys' fees. The Arbitration Agreement provides that "[e]ach party is responsible for its legal fees unless a motion to compel arbitration is granted then the losing party pays the other party's full legal fees." ECF No. 9-1

---

[5] Having found no procedural unconscionability, the Court need not also address substantive unconscionability. *See Fox*, 920 F. Supp. 2d at 97. But it also finds that substantive unconscionability—which requires an "egregious situation" in the absence of procedural unconscionability, *Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56, 68 (D.C. 2019) (citation modified)—is lacking. Nothing in the Arbitration Agreement—even if the terms, on balance, may favor Defendants—rises to that high standard.

at 8. And in the next paragraph, it further instructs that the "[a]rbitrator does not have the discretion to award legal fees or arbitrator fees." *Id*.

Bangura is right, at least insofar as she argues that the above clause is impermissible. "Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute." *Booker*, 413 F.3d at 79 (citing *Gilmer*, 500 U.S. at 26 and *Cole*, 105 F.3d at 1481); *see also Morgan v. Sci. Applications Int'l Corp.*, 612 F. Supp. 2d 81, 83–84 (D.D.C. 2009) ("Arbitration will be compelled only in those situations in which it will allow each party the opportunity to fully vindicate his statutory rights."). And her claims all arise from statutes that provide for a mandatory award of attorneys' fees for a prevailing plaintiff. *See* 28 U.S.C. § 216(b) (FLSA); D.C. Code § 32-1012(c) (DCMWA); D.C. Code § 32-1308(a)(1)(A) (DCWPCL); *see also Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016). Thus, any provision that limits her ability to vindicate those rights by limiting her recovery in that way is unenforceable. *See Booker*, 413 F.3d at 79 (finding arbitration agreement's ban on punitive damages unenforceable for suit filed under statute which permitted a punitive damages award).

Again, however, for the same reasons explained above, rather than invalidate the Arbitration Agreement, the Court will simply sever this provision to the extent that it limits her statutory right to recover attorneys' fees.

### IV.    Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendants' Motion to Compel Arbitration, ECF No. 9, is **GRANTED IN PART**, to the extent that it requests that the Court compel arbitration. It is further **ORDERED** that Defendants' Motion to Dismiss, ECF No. 24, is

**DENIED**.[6]

It is further **ORDERED** that, to the extent that the two provisions of the Arbitration Agreement identified above require Bangura to pay "all or part of the arbitrator's fees and expenses" to vindicate her federal statutory rights, or limit her statutory rights to recover attorneys' fees, they are **SEVERED** from the Arbitration Agreement. It is further **ORDERED** that Bangura's claims against Defendants shall be submitted to arbitration in accordance with the remaining portions of the Arbitration Agreement. It is further **ORDERED** that the parties shall file a joint status report within 14 days of the completion of arbitration.

It is further **ORDERED** that the case is **STAYED** until further order of the Court.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 8, 2026

---

[6] Instead of dismissing the case, the Court elects to stay it pending the resolution of arbitration. 9 U.S.C. § 3; *see Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 56 (D.D.C. 2022).